[Sac. No. 4571. In Bank.—May 16, 1932.]

MARY WILMES, an Incompetent Person, etc., Appellant,
v. JOHN REITZ, Respondent.

W. T. Belieu and Arthur C. Huston, Jr., for Appellant.

George R. Freeman and Duard F. Geis for Respondent.

PRESTON, J. — Mary Wilmes, an incompetent person, through her daughter and guardian *ad litem,* Katherine Wollwert, brought this action to secure, on allegation of lack of consideration, failure of delivery, fraud and undue influence, the cancellation of a certain deed to real property executed by her to defendant, her brother. Findings and

judgment were made in favor of defendant. Plaintiff appealed. The only real issue in the case is that of the alleged insufficiency of the evidence to support the findings and judgment.

Respondent had been a resident of Willows for about thirty-seven years. The real property in question was located there and was known as the Burrington Apartments. Respondent had purchased it in 1920, but for personal reasons had had the title placed in the name of a cousin, Katherine Lentz. He and Miss Lentz operated the apartment together until dissension arose between them some time during the year 1922 and he then instituted an action to compel her to reconvey his property to him. During that year also respondent went east and brought his sister (appellant) back to live with him. He had been theretofore partially supporting her. She was without property or money, except about $300, and she planned to keep house for him, in return for which he, from that time on, became her sole support. Respondent was about seventy-eight years of age and his sister was about seventy-five. She had always spoken in the Luxembourger language, understood English but poorly and relied wholly upon her brother to take care of her. Their relationship was one of mutual affection and trust.

In 1923, the Lentz suit was settled by payment on the part of respondent of the sum of about $25,000 for the return of his property. But he profited little from the experience, for he again took title in the name of another person—this time in the name of his sister (appellant). He had Miss Lentz deed the property to her and also assign to her a mortgage which her daughter, Katherine Wollwert, had executed to secure a loan. Appellant knew that the property belonged to respondent; he explained that he was deeding it to her merely so she would have it in case he predeceased her and she agreed and understood that she was to deed it back to him any time he wanted her to. So matters stood for several years.

Appellant was in poor health, and in February, 1930, her daughter, said Mrs. Wollwert, and the daughter's husband, came to Willows. During their visit respondent injured himself by falling from a tree and Mrs. Wollwert cared for him while he was disabled. She understood what had been

done with respect to the title to said property; she also knew that respondent was fond of her; indeed, he had indicated that if anything happened to him, he wanted her to have the apartment house and had caused appellant to make a will in her favor. However, he recovered from his illness, while appellant's health grew worse and discord entered into the relationship of the parties.

By April, 1930, the situation had altered materially. Mr. and Mrs. Wollwert went to Santa Cruz for a prolonged visit and in June, 1930, respondent's attorney, Mr. Freeman, received a letter from a Santa Cruz attorney, written at the instance of Mrs. Wollwert, wherein she asked that Mr. Freeman send her the deed to said property which had been executed by Miss Lentz to appellant. This aroused respondent's apprehensions and, after consulting with counsel, he decided to have his sister reconvey to him at once. He had at all times been in possession of the property, and exercised all rights of dominion and ownership over it. He had improved it, collected all rents and profits and had paid all bills and taxes assessed against it. Even Mrs. Wollwert had in effect recognized his ownership, for she had paid the money due on her said mortgage to him, notwithstanding the fact that assignment of it had been made by Miss Lentz to her mother and not to respondent.

On June 20, 1930, respondent and Mr. Freeman called upon appellant and asked her to execute the reconveyance. Mrs. Wollwert was present and influenced her mother not to sign, saying that they wanted a day or so to think the matter over. Respondent and Mr. Freeman therefore left and did not return until June 23d. They then saw appellant, but the daughter was absent, having gone that morning to an attorney's office to apply for papers of guardianship over appellant. The daughter knew of the appointment but she had apparently failed to control her mother's action and desired to avoid meeting respondent. At the request of Mr. Freeman, appellant executed the deed without protest, handed it to him and he thereafter had it recorded. No consideration passed from respondent to appellant for this conveyance. The daughter, having secured her guardianship papers, later commenced this action in her mother's behalf to have the transfer declared void, with the aforesaid result in the court below.

■ The court made full and complete findings. Among other things, it found that neither at the time of execution of said deed nor at any other time did respondent make any misrepresentation to or practice any fraud upon appellant; that he did not threaten her in any way or unduly influence her to make the deed but that at said time she was of sound mind, was competent and fully knew and understood the nature, purpose and effect of her act and that she executed and delivered the document voluntarily and of her own volition.

That the evidence abundantly supports these findings, and the judgment, there is no doubt. Respondent, appellant, Mrs. Wollwert, Mr. Freeman and others all gave testimony, some of it conflicting, but nevertheless indicating that the facts were substantially as above set forth. Furthermore, as stated by the trial court, although the testimony of appellant was rather contradictory, yet, considering her age and poor English, and examining it in the light of the surrounding circumstances, the conclusion is justified that she was competent at the time she executed the deed; undoubtedly she was in ill health; probably she had never been mentally strong and had never had any business experience; the conflict in her attitude was apparently brought about by a conflict in her mind between her obligation to her brother and the demands and importunities of her daughter; yet, independent of the alleged efforts of respondent or his attorney, and of the admitted efforts of her daughter, to influence her, she seemed to have settled the issue herself, in her own mind, in favor of the recognition of the justice of respondent's claim. There is no proof whatsoever of fraud or misrepresentation on the part of respondent. We do not have to review the evidence more in detail. It is sufficient to say that to our mind the court below reached the only conclusion which would be proper in this case.

■ Various points are discussed in the briefs referring to the claim that respondent failed to establish, by parol testimony or otherwise, a trust in appellant for his benefit. These issues do not properly arise upon this appeal and they will not be discussed. Respondent paid Miss Lentz $25,000 for the property; it belonged to him but he took title in the name of appellant upon the understanding that at his request she would convey to him. He then requested the re-

conveyance at a time when appellant is found to have been competent and to have known the significance of her acts. She was free either to comply with his wish and convey to him, with or without consideration, or to refuse to do so upon the ground that there was no trust, that he had given the property to her outright, or upon any other ground. Even were the property admittedly hers, she was free to make a deed of gift to him if she chose. The fact is that she did voluntarily reconvey to him without consideration.

This was a valid, voluntary transfer, with all the force of an executed contract (sec. 1040, Civ. Code) and appellant could not thereafter avoid it by alleging respondent's failure to prove a trust in her for his benefit. We do not mean to say that the evidence is insufficient to establish a trust; we simply say that whether or not a trust is shown is immaterial. Were this an action by respondent to compel his sister to deed the property to him, then the several contentions on this subject would be in point. But this cause is being prosecuted by appellant; it is no more than an action to cancel a deed upon the ground of undue influence, fraud, lack of consideration and failure of delivery. It having been sufficiently shown that no consideration was necessary, that there was a valid delivery and that there was neither undue influence nor fraud, the matter is concluded and the action of the court below must be affirmed. In other words, the only vital question, that of the sufficiency of the evidence, we have resolved in favor of respondent as we are in thorough accord with the views of the court below.

The judgment is affirmed.

Curtis, J., Shenk, J., Waste, C. J., Tyler, J., *pro tem.*, and Seawell, J., concurred.

Rehearing denied.