JOURNAL ENTRY AND OPINION
{¶ 1} William H. Maloof appeals from the trial court's decision, which dismissed his complaint for legal malpractice by granting the motions for judgment on the pleadings of defendants/appellees, Benesch, Friedlander, Coplan Aronoff, LLP, James M. Hill, H. Jeffery Schwartz, William E. Schonberg, and Michael A. Primrose (hereafter collectively referred to as "Benesch").
 {¶ 2} Maloof's complaint alleged Benesch committed legal malpractice when representing his company, Level Propane Gases, Inc., during its attempted sale, restructuring, and subsequent Chapter 11 bankruptcy action. Maloof's complaint also alleges that Benesch committed legal malpractice when it failed to represent him in his personal bankruptcy action. After reviewing the record, and for the following reasons set forth below, we affirm the trial court's decision to dismiss Maloof's complaint.
 {¶ 3} William Maloof is the sole shareholder and chief executive officer ("CEO") of Level Propane Gases, Inc. ("Level Propane"). Level Propane began to experience serious financial difficulties that resulted in the defaulting on bank loans owed to Deustche Bank Trust Company Americas, LaSalle Bank National Association, and Provident Bank (referred to collectively as the "Bank Group"). Maloof was originally loaned eighty million dollars from the Bank Group, which was secured by Maloof personally, his stock shares in Park Place, Inc.,[1] and his stock shares in Level Propane.
 {¶ 4} Sometime in November 2001, Maloof contacted Benesch in order to obtain legal services for the sale of Level Propane to a potential buyer, to restructure the corporation's obligations, including its bank loans or, in the alternative, to file Chapter 11 bankruptcy proceedings to avoid a bank takeover of the company. Shortly thereafter, Benesch agreed to represent Level Propane.
 {¶ 5} On February 20, 2002, Benesch sent a letter of engagement to Maloof agreeing to represent him in a personal income tax dispute with the I.R.S. Later realizing that there could be a conflict of interest to represent both Maloof and his corporation at the same time, Benesch sent Maloof a letter on April 17, 2002 terminating the relationship and representation of Maloof personally; Benesch remained counsel for Level Propane.
 {¶ 6} Maloof claims that, sometime between February and March 2002, Benesch advised him to give up control of Level Propane to the Bank Group in order to avoid the Bank Group forcing Level Propane into involuntary bankruptcy. Maloof gave up control of Level Propane to the Bank Group, and Benesch appointed John Rudd of Newmarket Partners, LLC as the chief restructuring officer. Maloof claims that John Rudd is a client of Benesch who was appointed as the chief restructuring officer by the Bank Group at the request of Benesch.
 {¶ 7} On June 6, 2002, Benesch sent a letter to Maloof advising that it was withdrawing as counsel for Level Propane because it believed Maloof, against its advice, was selling "pre-buys" for propane. Given Level Propane's current financial status, Benesch believed the sale of these propane "pre-buys" were in violation of the Ohio Consumer Sales Practices Act. Maloof claims that he fired Benesch as counsel for Level Propane and requested all documents that Benesch had prepared for Level Propane's Chapter 11 bankruptcy action; Maloof never received the documents and believed that Benesch had never prepared them.
 {¶ 8} That very same day, the Bank Group declared Level Propane in default of its outstanding loans and caused the corporation to be placed into Chapter 7 involuntary bankruptcy. A bankruptcy petition was filed in the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, underIn re Level Propane Gases, Case. No. 02-16172. The Bank Group then rehired Benesch to serve as debtor's counsel for Level Propane and converted the Chapter 7 involuntary bankruptcy action into a Chapter 11 reorganization bankruptcy.
 {¶ 9} On June 2, 2003, Maloof filed a complaint against Benesch, Friedlander, Coplan Aronoff, LLP, and its attorneys, James M. Hill, H. Jeffery Schwartz, William E. Schonberg, and Michael A. Primrose, alleging legal malpractice. Maloof's complaint alleged that Benesch knew the Bank Group intended to assume control of the company and force it into bankruptcy, and it failed to file a Chapter 11 bankruptcy petition on behalf of Level Propane while Level Propane was still under Maloof's control. Maloof claims Benesch acted in its own financial interests and in conjunction with the Bank Group when it advised Maloof to give up control of Level Propane. Maloof asserts that John Rudd was appointed by the Bank Group as Level Propane's chief restructuring officer at the recommendation of Benesch. Maloof further claims that Rudd was a client of Benesch, and Benesch profited by having Rudd appointed. Maloof alleges Rudd paid any and all legal bills sent by Benesch on behalf of Level Propane weekly and without question.
 {¶ 10} Maloof further alleged in his complaint that Benesch again committed legal malpractice when it agreed to represent him in his personal tax dispute with the I.R.S. and then withdrew its representation in order to keep representing a more profitable client, Level Propane.
 {¶ 11} Between July 3 and July 31, 2003, all defendants filed Civ.R. 12(C) motions for judgment on the pleadings. On August 25, 2003, Maloof filed a combined memorandum in opposition to all defendants' motions for judgment on the pleadings. On December 2, 2003, the trial court granted all the defendants' motions for judgment on the pleadings without opinion.
 {¶ 12} The appellant presents this timely appeal alleging one assignment of error for review:
 {¶ 13} "Whether the trial court correctly dismissed without comment a complaint for malpractice against a law firm that provided legal services to the corporation and to the sole shareholder individually."
 {¶ 14} Civ.R. 12(C) provides a party may move for judgment on the pleadings after the pleadings are closed but within such time as not to delay the trial. A motion for judgment on the pleadings simply presents a question of law, and the court may look to the allegations in the pleadings to decide the motion. The standard of review a trial court must use in ruling upon a motion for judgment on the pleadings pursuant to Civ.R. 12(C) was articulated by the court in Case Western Reserve Univ. v.Friedman (1986), 33 Ohio App.3d 347, 515 N.E.2d 1004. The court stated, in part:
 {¶ 15} "A motion for judgment on the pleadings is the same as a motion to dismiss filed after the pleadings are closed and raises only questions of law. The pleadings must be construed liberally and in a light most favorable to the party against whom the motion is made, and every reasonable inference in favor of the party against whom the motion is made should be indulged.Vaught v. Vaught (1981), 2 Ohio App.3d 264, 441 N.E.2d 811;Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 297 N.E.2d 113. The motion should be denied if it cannot be determined from the face of the pleadings that the pleading does not state a claim upon which relief can be granted. Calhoun v. Supreme Court ofOhio (1978), 61 Ohio App.2d 1, 399 N.E.2d 559.
 {¶ 16} Granting judgment on the pleadings is only appropriate where the plaintiff has failed in his complaint to allege a set of facts which, if true, would establish the defendant's liability. Walters v. First National Bank of Newark (1982),69 Ohio St.2d 677, 433 N.E.2d 608. "To uphold a dismissal on the pleadings pursuant to Civ.R. 12(C), the court must find, beyond a doubt, that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Lin v.Gatehouse Constr. Co. (1992), 84 Ohio App.3d 96, 99,616 N.E.2d 519.
 {¶ 17} Ohio law has consistently held that "an attorney's representation of a corporation does not make that attorney counsel to the corporate officers and directors as individuals."Nilavar v. Mercy Health System Western Ohio (S.D. Ohio 2001),143 F.Supp.2d 909, 913. See, also, Hile v. Firmin, Sprague Huffman Co., L.P.A. (1991), 71 Ohio App.3d 838, 595 N.E.2d 1023. Therefore, Ohio law has consistently recognized that because the corporation is a separate entity from its directors and officers, causes of action belonging to the corporation may not be litigated by the officers for their own benefit. See Maloof v.Squire, Sanders Dempsey, L.L.P., et al., Cuyahoga App. No. 82406, 2003-Ohio-4351.
 {¶ 18} A corporation is also a separate legal entity from its shareholders, even when there is but one shareholder. LeRoux'sBillyle Supper Club v. Ma (1991), 77 Ohio App.3d 417, 420,602 N.E.2d 685, citing First Natl. Bank of Chicago v. Trebein Co.
(1898), 59 Ohio St. 316, 52 N.E. 834; Suzzi, Inc. v. AtlanticDept. Stores (1976), 49 Ohio App.2d 65, 68-69, fn.1,359 N.E.2d 721.
 {¶ 19} "A plaintiff-shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed towards the corporation." Adair v. Wozniak
(1986), 23 Ohio St.3d 174, 178, N.E.2d 426.
 {¶ 20} A complaining shareholder has a direct action only if he is injured in a way that is separate and distinct from an injury to the corporation. Weston v. Weston Paper Mfg. Co.
(1996), 74 Ohio St.3d 377, 379, 658 N.E.2d 1058, citing Crosbyv. Beam (1989), 47 Ohio St.3d 105, 107, 548 N.E.2d 217. The shareholder may maintain an action in the shareholder's own right against a third party when the injury resulted from a violation of a "special duty," namely the duty which created a cause of action in favor of the shareholder as an individual; however, a shareholder may bring such an action only when that duty originated from circumstances independent of the shareholder's status as a shareholder. Adair, supra. See, also, Emerson v.Bank One, Akron, N.A., Summit App. No. 20555, 3-4, 2001-Ohio-176.
 {¶ 21} "A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization." EC 5-19 of the Code of Professional Responsibility.
 {¶ 22} To establish a claim for legal malpractice, the plaintiff must show: "(1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." Vahila v. Hall, 77 Ohio St.3d 421,1997-Ohio-259, 674 N.E.2d 1164, syllabus.
 {¶ 23} The statute of limitations for legal malpractice actions is one year. R.C. 2305.11(A). The statute of limitations for a legal malpractice action commences to run "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when theattorney-client relationship for that particular transaction orundertaking terminates, whichever occurs later. Gatchell v.Lawyers Title Ins. Corp. (Sept. 7, 1999), Franklin App. No. 98AP-1487 (emphasis added). See, also, Omni Food Fashion, Inc.v. Smith (1988), 38 Ohio St.3d 385, 528 N.E.2d 941.
 {¶ 24} First, we will address the appellant's claim that the appellee committed legal malpractice when failing to represent him in his personal income tax dispute with the I.R.S. The record is clear that the appellant and Benesch engaged in a contractual attorney-client relationship on February 21, 2002, which created a duty to represent. However, the attorney-client relationship ended on April 17, 2002, when Benesch sent the appellant a "non-engagement letter" terminating the representation. The statute of limitations for a claim of legal malpractice in Ohio is one year; therefore, the statute of limitations began to toll on April 17, 2002 and would have expired on April 17, 2003. Because the appellant filed suit after the statute of limitations had expired, the trial court did not err in granting the appellees' motions for judgment on the pleadings.
 {¶ 25} Second, the appellant argues that the trial court erred by finding that Adair v. Wozniak, supra, was dispositive of his legal malpractice claim concerning Benesch's representation of Level Propane. The appellant contends "there is no bright line rule between the legal representation of the interest of a sole shareholder and its corporation." Specifically, the appellant claims that because Benesch legally represented Level Propane and had to consistently consult with him concerning the affairs of the corporation, combined with the fact that he was the sole shareholder, this created a fiduciary duty between himself and Benesch sufficient to sustain a separate cause of action apart from that of the corporation. We disagree with the appellant's assertion.
 {¶ 26} It is undisputed that the appellant was the CEO and sole shareholder of Level Propane. The record is also clear that Benesch specifically represented Level Propane as a client, not the appellant. The record reflects that Benesch first contracted to represent Level Propane and later contracted to represent the appellant personally. When Benesch realized that it may have a conflict of interest in representing both Level Propane and the appellant, it withdrew its representation of the appellant in his personal I.R.S. dispute. We note that Level Propane is still in bankruptcy.
 {¶ 27} The law is clear that a lawyer owes a fiduciary duty to the corporate entity, not a shareholder, officer, or director. A corporation is a separate legal entity from its shareholders, even when there is but one shareholder. Ibid. If Benesch committed legal malpractice by failing to file a Chapter 11 bankruptcy petition before the Bank Group forced Level Propane into involuntary bankruptcy, this cause of action would belong to the corporation and not to a shareholder or corporate officer.
 {¶ 28} Benesch did not advise the appellant to secure loans for the corporation personally and with the shares he owned in Level Propane and Park Place. Had the appellant not personally guaranteed the loans, he would have suffered the same injury suffered by the corporation. Furthermore, the appellant has failed to show that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed towards the corporation.
 {¶ 29} The appellant further claims that Benesch committed legal malpractice by advising him to relinquish the voting rights of the corporation to the Bank Group instead of filing a Chapter 11 bankruptcy petition on behalf of the company. However, Benesch's fiduciary duty was to the interests of the corporation and not to the personal interests of the appellant. The appellant has failed to establish that Benesch, through its actions, owed a fiduciary duty or obligation to him in addition to the obligation it owed to the corporation.
 {¶ 30} The establishment of a duty or obligation between the appellee and the appellant is the first element necessary to establish a legal malpractice claim; legal malpractice was the sole cause of action alleged in the appellant's complaint. If the facts of the appellant's complaint are taken as true, he may have had a cause of action for fraud, conspiracy, or misrepresentation against Benesch, but he would not have had a claim for legal malpractice because no duty or obligation to represent existed between the appellant and Benesch.
 {¶ 31} We decline to adopt the appellant's assertion and find that a cause of action owed to a sole shareholder is the same cause of action which may be brought by the corporation. Ohio law concerning corporations is well established. The appellant, acting as the CEO and sole shareholder, lacks standing as a matter of law to bring a legal malpractice claim on behalf of the corporation against a law firm absent a special duty.
Judgment affirmed.
It is ordered that appellees recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., Concurs;* Gallagher, J., Concurs injudgment only with separate Concurring Opinion.
[1] Maloof is also the sole share holder of Park Place, Inc., which owns a parking lot located across the street from Cleveland Hopkins Airport.
* Judge Anne L. Kilbane concurred in this Journal Entry and Opinion prior to her death on November 22, 2004.
 CONCURRING OPINION